Filed 7/14/25  P. v. Richardson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DEWAYNE MCGEE RICHARDSON,<br><br>Defendant and Appellant. | F087660<br><br>(Super. Ct. No. SC082158B)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# **INTRODUCTION**

Petitioner Dewayne McGee Richardson petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder (§ 187, subd. (a)). The trial court conducted an evidentiary hearing and denied the petition on the ground petitioner "could still be convicted of the murder . . . under the [p]rovocative [a]ct [d]octrine" because he was a "major participant[] who acted with reckless indifference to human life when [he] participated in the incident which le[]d to the death . . . ."

In his opening brief, petitioner argued the order denying the petition must be reversed because the evidence failed to show that either he or his codefendant committed a provocative act that led to the victim's death, or that he personally harbored malice or acted with reckless indifference to human life. In a supplemental opening brief filed after this court's decision reversing the same order concurrently filed in petitioner's codefendant's case (*People v. Taylor* (2025) 108 Cal.App.5th 849 (*Taylor*)), petitioner now additionally asserts the trial court misunderstood the applicable law, and argues the evidence and the court's factual findings are insufficient to prove beyond a reasonable doubt that he aided and abetted a provocative act with malice. As such, petitioner contends remand for resentencing is the appropriate remedy. The People concede the court applied the incorrect legal standard but argue the appropriate remedy is remand for the trial court to assess the evidence under the appropriate legal standard.

We conclude substantial evidence supports a finding that either petitioner or his codefendant committed a provocative act that resulted in the victim's death. Consistent with *Taylor*, we also hold the trial court misconstrued the elements of provocative act murder and thus did not find petitioner guilty of murder under a valid theory. We reverse

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

the order denying the petition and remand for further proceedings, including the opportunity for the trial court to consider the evidence under a proper application of the elements of provocative act murder.

## FACTUAL BACKGROUND

Only a brief recitation of the facts is necessary to our disposition of this appeal.

In the late hours of December 5, 2000, petitioner, Darryl McCoy, and Tramell Taylor gathered at McCoy's mother's house and discussed the prospect of robbing several men at a nearby motel. One of their proposed victims was Kendall M.,[2] a drug dealer who was living in room 4 of the motel.

In the early morning hours of December 6, 2000, Bobby S. saw McCoy at the motel with two men Bobby did not know. According to Bobby, McCoy was wearing a light-colored sweatshirt.

Around the same time Calvin M. arrived at the motel to pick up Kendall. He noticed three or four guys in the parking lot wearing dark clothing. He went to Kendall's room and informed him that the men looked suspicious, like they "might be getting geared up for something," and that Kendall should hurry up and get out of there as planned. Kendall closed the door and Calvin went back toward the car. Kendall spent a few minutes in his room, gathering his things to leave. Two other men – Shavon S. and Tyrone J. – were with him in the room at that time.

When Kendall opened the door to leave, he saw "silver guns" and "gun flashes." Kendall could not tell how many assailants were involved. Kendall ran to the bathroom and jumped in the shower for three to five minutes until the gunshots abated, after which he went out the bathroom window. Kendall was shot in the left arm, right arm, and

---

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

abdomen but survived. The person who shot him was wearing dark clothing and his face was covered by a mask or a hood.

McCoy was fatally shot in his left chest. Kendall and his companions who were in room 4 at the time of the shooting denied having or seeing a gun in the room.

Shavon testified that he was on the bed in room 4 when "somebody ran in the room shooting." The first shooter shot from inside the doorway and a second shooter started shooting from outside, into the room. He did not see what they were wearing and did not see anyone get shot. He did not see anyone wearing light-colored clothing inside the room. He did not recall telling a detective that he saw two people in dark clothing shooting from the door, or that one of those shooters eventually came in. When law enforcement spoke with Shavon shortly after the shooting, petitioner's name was mentioned in a police radio broadcast and Shavon stated, "[Taylor] definitely shot [Kendall]." Shavon later explained to a detective that this statement was based on what he had heard from others and he did not see the shooting.

Tyrone testified he was asleep when the shooting began. He heard shots, jumped to the floor, and stayed there. He did not see whether anyone came into the room shooting or shot from outside.

Brian C. testified he was next door in room 3 when he heard gunshots. He later told a detective that he looked out the window and saw a man in a light-colored sweatshirt, standing outside the window of room 3, holding a handgun and shooting into room 4. At trial, Brian denied making this statement and denied looking out the window and seeing anything.

Extensive ballistics evidence was collected from the scene. Two .45-caliber unexpended bullets were found in the motel parking lot. An expended nine-millimeter projectile slug was found outside of room 3. Inside room 4, officers observed numerous bullet strikes and holes in the walls.

Eight nine-millimeter expended shell casings and four nine-millimeter bullets were recovered from the scene. All nine-millimeter shell casings were fired from the same gun. All nine-millimeter bullets were fired from the same gun, but could not be compared to the nine-millimeter shell casings. A nine-millimeter bullet recovered from Kendall was fired from the same gun as the other nine-millimeter bullets. Two .38-caliber expended bullets recovered from the scene were both fired from the same gun. An expended bullet recovered from McCoy's body, which was possibly a nine-millimeter or .38-caliber bullet, was not fired from any of the firearms that fired the other nine-millimeter and .38-caliber bullets located at the scene.

Petitioner, McCoy, and Taylor were believed to be members or associates of a gang, and Kendall was believed to be an affiliate of a rival gang.

## PROCEDURAL HISTORY

### I.    Underlying Convictions

On June 27, 2001, petitioner and Taylor were convicted of conspiracy to commit robbery (§ 182, subd. (a)(1); count 1) and the first degree murder of McCoy (§ 187, subd. (a); count 2). The jury found true a gang enhancement to count 1 (§ 186.22, subd. (b)(1)) and a special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)).[3] Petitioner initially was sentenced on count 2 to an indeterminate term of life without the possibility of parole, with a concurrent 12-year sentence imposed on count 1. On appeal, this court directed the trial court to make specified corrections to the abstract of judgment, but otherwise affirmed. (*People v. Taylor* (Oct. 14, 2003, F039096) [nonpub. opn.].)

---

[3] As to count 1, the jury also found true a vicarious arming enhancement pursuant to section 12022.53, subdivision (d). However, this enhancement was later stricken by the court. Additionally, as to Taylor, the court found true an on-bail enhancement.

## II.     Section 1172.6 Petition

On July 12, 2019, Taylor filed a petition for resentencing pursuant to section 1172.6.  On August 14, 2019, petitioner filed his own petition for resentencing pursuant to section 1172.6.  While petitioner's petition remained pending, the trial court summarily denied Taylor's petition without providing a statement of reasons.  We reversed and remanded with directions to issue an order to show cause and, to the extent necessary, hold an evidentiary hearing.  (*Taylor*, *supra*, 108 Cal.App.5th at p. 856.)

After our remand in Taylor's appeal, the trial court conducted a single evidentiary hearing as to both petitioner's and Taylor's petitions.  No new evidence was submitted and the People proceeded only on the transcripts from petitioner's trial.  The court identified the issue before it as whether either petitioner or Taylor would "be found guilty as to the crimes charge[d] under current law."  The People argued petitioner was guilty of felony murder under section 189, subdivision (e)(3) as a major participant in the robbery who acted with reckless indifference to human life.  The prosecutor acknowledged that McCoy was not killed by a bullet fired by Taylor, but argued that Taylor committed a provocative act which caused return fire that killed McCoy.  The prosecutor further argued the evidence showed that both petitioner and Taylor acted with reckless indifference to human life, which the prosecutor argued was sufficient to establish the requisite mens rea under either section 188 or 189.

Petitioner argued the evidence did not suggest that he was a provocateur accomplice who fired into the hotel room.  Petitioner did not dispute that he participated in a planned robbery but argued he did not act with reckless indifference to human life.

The People responded that the evidence supported a finding that, among the three codefendants, Taylor was the provocateur.  However, the People argued that the steps taken by both Taylor and petitioner in planning the robbery led to McCoy's death.

## III.   Trial Court's Ruling

On February 21, 2024, the trial court denied petitioner's and Taylor's petitions together in a lengthy written order, which the court also read on the record.

In its ruling, the court acknowledged its role as factfinder in the evidentiary hearing and the prosecution's burden to prove, beyond a reasonable doubt, that petitioner is guilty of murder under current law.  The court went on to state that the "critical determination" in this case was whether petitioner "w[as] a major participant who acted with reckless indifference to human life."  (Boldface & capitalization omitted.)  In setting forth the applicable law on this point, the court set forth the standard for aider and abettor liability under an implied malice theory and also set forth the standards for major participation and reckless indifference under a felony-murder theory.  The court then set forth the applicable law on the provocative act doctrine before ultimately rejecting the petitions as follows:

> "Since the amendments to the Penal Code in 2019, [petitioner and Taylor] can now only be held accountable for the murder of McCoy as an aider and abettor to the robbery, or under the [p]rovocative [a]ct [d]octrine, if [petitioner and Taylor] personally acted with malice by being a 'major participant' who acted 'with reckless indifference to human life' so that each [of petitioner's and Taylor's] own personal intent to kill can be implied.

> "This Court agrees with the determination of the trial judge in ruling on the New Trial Motion, that [petitioner and Taylor] were convicted of murder under the [p]rovocative [a]ct [d]octrine.  Contrary to the argument of [petitioner's and Taylor's] counsel at the evidentiary hearing, the evidence presented at the preliminary hearing and at trial clearly supports a finding that at least two people fired weapons into [r]oom 4.  Thus, there was more than one provocateur.  The Court concludes that even if McCoy fired the first shot that injured [Kendall], one or both of [petitioner and Taylor] also fired into [r]oom 4.  McCoy was not the sole provocateur of his own death and at least one of his accomplices, Taylor or [petitioner], was a surviving provocateur.

"There were at least three different firearms which were discharged within or into [r]oom 4. Even assuming McCoy and one of the men inside [r]oom 4 discharged weapons, there is still one more gun which was fired. The Court concludes that [petitioner or Taylor] was the third shooter. The other . . . was an aider and abettor in the robbery and, therefore, also responsible for the [p]rovocative [a]ct [d]octrine murder.

"Both [petitioner's and Taylor's] own actus reus support a finding that each was at least a direct aider and abettor in the robbery. Both [petitioner's and Taylor's] actions were not merely dangerous to life in some vague or speculative sense. Unlike the defendant in the case of *People v. Reyes*, (2023) 14 Cal.5th 981, who merely rode a bike down a road, [petitioner's and Taylor's] own personal actions, in bringing guns to the [m]otel room of a known rival gang member who was known to sell drugs from the [m]otel created a dangerous situation. The evidence is clear that multiple firearms were present and fired into [r]oom 4 and, therefore, the Court concludes that at least [petitioner or Taylor] had to have actually fired into [r]oom 4. McCoy would have been incapacitated in a matter of a second after being shot and, therefore, he could not have been the one who continued to shoot into [r]oom 4. It had to be one of the other accomplices – Taylor or [petitioner].

"After reviewing the factors set forth in [*People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522], it is clear that [petitioner and Taylor] were both major participants who acted with reckless indifference to human life when they participated in the incident which le[]d to the death of McCoy. [¶] Both Taylor and [petitioner] were clearly involved in the planning of the criminal enterprise that led to the death of McCoy. They were both convicted by the jury of conspiracy to commit the robbery with the overt act of planning the robbery. The Court must accept this finding by the jury. However, the Court also makes the same factual finding based upon the record reviewed.

"There was no evidence presented regarding the role of the [petitioner and Taylor] in supplying the firearms but the Court finds that both [petitioner and Taylor] were at least carrying firearms. [Petitioner and Taylor] were aware of the presence of weapons in the hands of their accomplices. The preliminary hearing testimony of [a witness] was that Taylor admitted that both he and [petitioner] had guns during the incident. Taylor had told [the witness] he had dropped his gun and [petitioner's] gun had jammed. Taylor admitted that he was able to fire his gun later. The trial record also leads this Court to conclude that both [petitioner and Taylor] were carrying

weapons. It is unfathomable that a gang member would go into the territory of a rival gang without bringing a weapon with him.

"Both [petitioner and Taylor] were well aware of the particular dangers posed by the nature of the crime of robbery of a drug dealer from a rival gang. The jury found the crime was done for the benefit of the criminal gang . . . . [Petitioner, Taylor, and McCoy] were well aware of each of their past criminal conduct.

"Both [petitioner and Taylor] were present at the scene of the killing and had been in a position to prevent the actual killing of their accomplice. They had ample opportunity to restrain McCoy and whomever else fired into [r]oom 4. At least [petitioner or Taylor] fired into [r]oom 4 and it was the return fire of those inside [r]oom 4 which le[]d to the death of McCoy.

"[Petitioner and Taylor], or their accomplice, McCoy, were the ones who initiated the use of lethal force. They could have prevented the blood shed at any time by simply not going to the [m]otel to attempt to rob a rival gang drug dealer.

"The Court finds that beyond a reasonable doubt Taylor and [petitioner] could still be convicted of the murder of McCoy under the [p]rovocative [a]ct [d]octrine even after the amendments to Penal Code Sections 188 and 189 which became effective on January 1, 2019." (Some italics omitted.)

## DISCUSSION

### I. Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) First, the bill narrowed the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).)

Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.) Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.) If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).)

At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (*Ibid*.)

10.

"Ordinarily, a trial court's denial of a section 1172.6 petition [following an evidentiary hearing] is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citation.] But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

## II.    General Principles of Provocative Act Murder

The provocative act doctrine arose as an alternative to felony-murder liability in circumstances where the killing was committed by a third party who was not involved in the perpetration of the underlying felony. The contours of the doctrine were first outlined in two California Supreme Court cases, *People v. Washington* (1965) 62 Cal.2d 777 (*Washington*), and *People v. Gilbert* (1965) 63 Cal.2d 690 (*Gilbert*), reversed on other grounds in *Gilbert v. California* (1967) 388 U.S. 263.

In *Washington*, two men attempted to rob a gasoline station. However, upon hearing someone yell " 'robbery,' " the proprietor of the gasoline station immediately shot and killed one of the perpetrators. The surviving perpetrator was convicted of the murder of his accomplice under a felony-murder theory. (*Washington*, *supra*, 62 Cal.2d at pp. 779–780.) Our Supreme Court reversed, holding that the felony-murder rule applied only to a killing committed "in the perpetration [of] or attempt to perpetrate" specified felonies, whereas a killing committed by the intended victim of the felony is "not committed to perpetrate the felony," but rather to thwart it. (*Id.* at p. 781.) The court noted, however, that "[d]efendants who initiate gun battles may also be found guilty of murder if their victims resist and kill. Under such circumstances, 'the defendant for a

11.

base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death.' " (*Id.* at p. 782.) In other words, a defendant who acted with malice in initiating a gun battle could be held liable for the resulting killing of an accomplice, even if he did not personally fire the lethal shot.

About seven months later, in *Gilbert*, the high court addressed the gun battle that *Washington* foreshadowed. Gilbert and his accomplice, Weaver, robbed a bank while another accomplice, King, waited in a getaway car. (*Gilbert*, *supra*, 63 Cal.2d at pp. 696–698.) As Gilbert and Weaver were leaving the bank, Gilbert fired upon a responding officer, fatally wounding him. As they fled, a different officer fatally shot Weaver. (*Id.* at p. 697.) Both Gilbert and King were convicted of Weaver's murder. (*Id.* at p. 696.) The high court recognized that Gilbert and King could not be convicted of Weaver's murder under the felony-murder rule, but stated that "the evidence . . . would support a conviction of first degree murder on the ground that Weaver was killed in response to a shooting initiated by Gilbert." (*Id.* at p. 703.) Because the jury was not instructed on the latter theory, the high court reversed the murder convictions and set forth in detail the principles that would apply on retrial. (*Id.* at pp. 704, 712.)

First, the high court held that malice, as required to support a murder conviction, could be implied when "[a] defendant *or his accomplice* ' "for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death," ' " and that initiating a gun battle was such an act. (*Gilbert*, *supra*, 63 Cal.2d at p. 704, italics added.) Second, the court held that "[t]he killing must be attributable to the act of the defendant *or his accomplice*" (*ibid.*, some italics omitted): "When the defendant *or his accomplice*, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, *not merely to the commission of a felony*, but to the

12.

intentional act of the defendant or his accomplice committed with conscious disregard for life" (*ibid.*, italics added). Third, the court held that, "[u]nder the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice. To be so guilty, however, the accomplice must cause the death of another human being by an act committed in furtherance of the common design." (*Id.* at p. 705.) Finally, the court held that, when murder is otherwise established under sections 187 and 188, "section 189 may be invoked to determine its degree." (*Gilbert*, at p. 705.)

"*Gilbert* established that provocative act murder, unlike felony murder, requires proof of malice aforethought," but expressly required only that the provocateur, e.g., the perpetrator who initiated the gun battle, act with that mental state. (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1177 (*Lee*).) *Gilbert* thus left open the possibility that surviving nonprovocateur accomplices could be liable for murder based on a provocateur accomplice's mental state. "The Supreme Court confirmed in subsequent cases that a defendant could be guilty of provocative act murder based on the malicious and provocative acts of his confederates, without a showing that the defendant himself harbored malice."[4] (*Lee*, *supra*, at p. 1178; see *id.* at pp. 1178–1179 [collecting cases].) For many years thereafter, courts held that "a nonprovocateur defendant could be convicted of murder based on a finding that his provocateur accomplice acted with malice aforethought." (*Lee*, at p. 1179.)

---

[4] However, "when the deceased himself is the sole provocateur, his nonprovocateur accomplice cannot be liable for murder because the provocateur did not cause the death of another but only his own death." (*Lee*, *supra*, 95 Cal.App.5th at p. 1179, citing *People v. Antick* (1975) 15 Cal.3d 79, 91, superseded by constitutional amendment on another ground as stated in *People v. Castro* (1985) 38 Cal.3d 301, 308.)

It was not until the decision in *People v. Concha* (2009) 47 Cal.4th 653 (*Concha*) that the high court suggested a murder conviction under a provocative act theory requires proof of an individual defendant's own mental state.[5] In *Concha*, three men – Concha, Hernandez, and Sanchez – attempted to murder a fourth man. The intended victim responded by fatally stabbing Sanchez, and Concha and Hernandez were convicted of Sanchez's first degree murder. (*Concha*, *supra*, at p. 658.) The primary issue in *Concha* was whether such a killing could be classified as first degree, as opposed to second degree, murder. (*Id.* at pp. 658, 660.) On that issue, the court held that the degree of murder was to be determined by the individual defendant's own mental state, such that a defendant who personally acts willfully, deliberately, and with premeditation and intent to kill would be guilty of first degree murder. (*Id.* at pp. 661–662.)

In addition, the court's analysis more broadly clarified that the provocative act doctrine is a theory of proximate causation, which does not otherwise affect the general principle that murder liability requires proof that the individual defendant personally harbored malice. (*Concha*, *supra*, 47 Cal.4th at pp. 660–661; see *id.* at p. 663 [provocative act murder is "merely shorthand used 'for that category of intervening-act causation cases in which, during the commission of a crime, the intermediary (i.e., a police officer or crime victim) is provoked by the defendant's conduct into [a response

---

[5] Until recently, Courts of Appeal were divided on the question of whether a pre-*Concha* murder conviction under a provocative act theory necessarily establishes a petitioner's ineligibility for resentencing as a matter of law for purposes of section 1172.6. (See, e.g., *People v. Antonelli* (2023) 93 Cal.App.5th 712, 720–721, revd. with directions (*People v. Antonelli* (2025) 17 Cal.5th 719; *Lee*, *supra*, 95 Cal.App.5th at pp. 1175–1181.) Our Supreme Court recently confirmed that " 'malice was not necessarily required on the part of the non-provocateur accomplice under the provocative act murder doctrine' " prior to *Concha*, and thus a pre-*Concha* finding did not render a defendant categorially ineligible for section 1172.6 relief. (*People v. Antonelli*, *supra*, 17 Cal.5th at pp. 722–723.) In this case, the parties do not argue petitioner's conviction of provocative act murder establishes his ineligibility for resentencing as a matter of law, and our Supreme Court's disposition of *Antonelli* does not affect our analysis.

that results] in someone's death' "].)  The court explained:  "To satisfy the actus reus element of murder, an act of either the defendant *or an accomplice* must be the proximate cause of death.  [Citations.]  For the crime of murder, as for any crime other than strict liability offenses, 'there must exist a union, or joint operation of act and intent, or criminal negligence.'  [Citation.]  To satisfy the mens rea element of murder, the defendant must personally act with malice aforethought."  (*Id.* at p. 660.)  Accordingly, "a defendant may be liable for murder when he possesses the appropriate mens rea and either the defendant or an accomplice causes an unlawful death."  (*Ibid.*)

The high court reiterated this requirement in *People v. Gonzalez* (2012) 54 Cal.4th 643.  There, the high court summarized the provocative act doctrine as follows:  "A murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing.  [Citations.]  A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response.  [Citations.]  Although the doctrine has often been invoked in cases where the defendant initiates or participates in a gun battle [citation], it is not limited to this factual scenario.  [Citations.]  Malice will be implied if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger."  (*Id.* at p. 655.)

As we recently explained in *Taylor*:

> "The foregoing cases make clear two essential elements of the provocative act doctrine.  First, for the provocative act doctrine to apply, the defendant or a surviving accomplice must commit a life-endangering provocative act, and a third party must kill in response to that act.  Second, the defendant, whether the provocateur or not, must have acted with a mens rea sufficient to support a conviction for murder.

15.

"Although not specific to the provocative act doctrine, our Supreme Court has recently clarified the mens rea required under a direct aiding and abetting theory of implied malice murder after the passage of Senate Bill No. 1437. (*Reyes*, *supra*, 14 Cal.5th at p. 991.) Because *Reyes* clarifies the mens rea necessary to support a conviction for murder as a direct aider and abettor, it is relevant to nonprovocateur accomplice liability in the context of the provocative act doctrine. *Reyes* provides: '[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' (*Ibid.*, italics omitted.) Where the life-endangering act is a shooting, the aider and abettor must know the perpetrator intended to shoot at the victim, intend to aid the perpetrator in the shooting, know that the shooting was dangerous to life, and act in conscious disregard for life. (*Id.* at p. 992.) Where a trial court conducts a section 1172.6 evidentiary hearing and sustains an implied malice murder conviction on a direct aiding and abetting theory, but its factual findings fail to address these elements of the offense, the court's decision is based on an error of law and subject to reversal unless the record establishes the court would have reached the same result under the correct legal standards. (*Reyes*, at p. 992.)" (*Taylor*, *supra*, 108 Cal.App.5th at p. 865.)

## III. Substantial Evidence Supports the Court's Finding that Either Petitioner or Taylor Was a Provocateur in the Gun Battle that Led to McCoy's Death

Petitioner contends substantial evidence does not support a finding that either he or Taylor committed a provocative act before McCoy was shot and killed. Petitioner contends McCoy himself may have fired the first shot constituting the provocative act that led to his death. Alternatively, he contends Kendall may have fired the first shot, killing McCoy without provocation by any of the codefendants. He asserts there is no evidence to show that either he or Taylor began firing before McCoy and Kendall began shooting at each other. As such, he contends he may not be convicted of murder under a provocative act theory. We conclude substantial evidence supports a finding that either petitioner or Taylor committed a provocative act that resulted in McCoy's death.

16.

For the provocative act doctrine to apply, "[a] defendant's provocative acts must actually provoke a victim response resulting in an accomplice's death." (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 584.) "By necessity, the provocative act must occur before a victim may make a lethal response." (*Ibid.*) Here, Kendall testified that, when he opened the motel room door, he immediately saw "silver guns" and "gun flashes." The person who shot him was wearing dark clothing, but McCoy was described by others as wearing a light-colored sweatshirt. Shavon similarly testified that someone "ran in the room shooting." The first shooter shot from inside the doorway and a second shooter started shooting from outside, into the room. Shavon did not see anyone in a light-colored sweatshirt inside the room, suggesting the first shooter was not McCoy. Brian C. likewise told law enforcement that a man wearing a light-colored sweatshirt was shooting from outside the room. The foregoing constitutes substantial evidence that either petitioner or Taylor was the person wearing dark clothing who ran into the room shooting and thus was the initial provocateur.

Accordingly, substantial evidence supports the court's finding that either petitioner or Taylor committed a provocative act that led to McCoy's death.

## IV. The Order Denying the Petition Must Be Reversed Because the Court Misunderstood the Elements of Provocative Act Murder

The parties agree that our decision in *Taylor*, *supra*, 108 Cal.App.5th 849, controls the outcome of this case. There, we held that the trial court "appear[ed] to have based its finding of guilt on a felony-murder theory that is inapplicable under the facts of this case," which involves a provocative act theory of murder. (*Id.* at p. 865.) We therefore determined the court's finding was legally erroneous. (*Id.* at p. 866; see *Washington*, *supra*, 62 Cal.2d at p. 781 [holding the felony-murder rule is inapplicable to provocative act murder].) We further noted that the trial court had declined to determine whether Taylor was a provocateur in the events leading to the murder, and we therefore

considered whether the court's findings were sufficient to find Taylor guilty as a nonprovocateur accomplice.  (*Taylor*, at pp. 858, 866–868.)  We concluded they were not:

> "Here, the court found [Taylor] acted with reckless indifference to human life when he 'participated in *the incident* which le[]d to the death of McCoy.'  (Italics added.)  All the court's corollary findings regarding the [*People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522] factors pertain to [Taylor]'s participation in the robbery.  None of the findings pertain to the provocative act of initiating a gun battle.  Under the provocative act doctrine, it is the provocative act, and not merely the underlying criminal conduct, which serves as the life-endangering act that permits a finding of implied malice.  (*Gilbert*, *supra*, 63 Cal.2d at p. 704.)  Moreover, aside from the felony-murder context, participating in an 'incident' or other criminal conduct while harboring malice is no longer sufficient to support a valid theory of murder liability.  (See *Curiel*, *supra*, 15 Cal.5th at pp. 462–463 ['The Legislature sought to limit murder liability to established theories that incorporated the requisite intent; it did not intend to impose an intent requirement untethered from existing theories of liability.']; see also *id.* at p. 470 [intent to aid in an underlying offense does not establish a valid theory of murder, even where the aider and abettor acts with intent to kill, if the aider and abettor does not subjectively know that life-endangering conduct will occur and does not intend to aid in that conduct]; *Reyes*, *supra*, 14 Cal.5th at p. 992 ['[I]mplied malice murder requires attention to the aider and abettor's mental state concerning the life endangering act committed by the direct perpetrator, such as shooting at the victim.'].)  The court's finding that [Taylor] participated in a robbery with reckless indifference to human life does not equate to a finding that [Taylor], as a nonprovocateur accomplice, aided and abetted provocative act murder with implied malice.

> "To find [Taylor] guilty of implied malice murder based on a provocative shooting initiated by [petitioner], the court was required to find that [Taylor] knew [petitioner] intended to shoot at Kendall and/or his associates, intended to aid [petitioner] in the shooting, knew that the shooting was dangerous to life, and acted in conscious disregard for life.  (*Reyes*, *supra*, 14 Cal.5th at p. 992.)  Because the court did not so find, we cannot uphold its decision under an implied malice theory of provocative act murder for a nonprovocateur.  The court's decision reflects that the court misunderstood the legal requirements of this offense and, given the nature of the error, 'it is "uncertain whether the trial court would have reached the same result using correct legal standards." '  (*Ibid*.)  The appropriate remedy is reversal of the order denying the petition and remand for further

proceedings consistent with this opinion." (*Taylor*, *supra*, 108 Cal.App.5th at pp. 867–868, fn. omitted.)

As with Taylor, the trial court determined petitioner was guilty of provocative act murder under an inapplicable felony-murder theory. The trial court also declined to determine whether petitioner was a provocateur, and did not make the findings necessary to find petitioner guilty as a nonprovocateur accomplice. Accordingly, the order denying the petition must be reversed.

## V. Proceedings on Remand

The parties disagree regarding the extent of permissible proceedings on remand.

Petitioner contends we must remand with directions for the court to resentence him because substantial evidence does not support a finding that he acted with malice. The People contend the factual determination of whether petitioner acted with malice must be made by the trial court in the first instance, and the matter therefore should be remanded for the court to consider the evidence under a proper application of the elements of provocative act murder.[6] We agree with the People.

Under section 1172.6, subdivision (d)(3), the trial court acts as an independent factfinder to determine whether a petitioner is guilty of murder under a valid theory. We decline to consider whether substantial evidence supports factual findings the court has yet to make. On remand, the court may consider the facts under a proper application of the elements of provocative act murder, and we express no view on the merits of the petition under such application. (See *Reyes*, *supra*, 14 Cal.5th at p. 992 [where the court misunderstood the legal requirements of a particular theory of murder, the appropriate remedy was remand to consider the petition under a proper application of the elements of murder under such theory].)

_____

[6] Alternatively, the People contend substantial evidence supports a finding of malice.

## **DISPOSITION**

The order denying the petition is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.


DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

20.